# In re SOFFICI, Petitioner

*In Visa Petition Proceedings*

A76 472 614

Designated as a precedent by the Commissioner, June 30, 1998.
(Decided by the Associate Commissioner, Examinations, June 25, 1998.)

(1) A petitioner under § 203(b)(5) of the Immigration and Nationality Act cannot establish the requisite investment of capital if he lends the money to his new commercial enterprise.

(2) Loans obtained by a corporation, secured by assets of the corporation, do not constitute capital invested by a petitioner. Not only is such a loan prohibited by 8 C.F.R, § 204.6(e), but the   petitioner and the corporation are not the same legal entity.

(3) A petitioner's personal guarantee on a business's debt does not transform the business's debt into the petitioner's personal debt.

(4) A petitioner must present clear documentary evidence of the source of the funds that he invests. He must show that the funds are his own and that they were obtained through lawful means.

(5) A petitioner who acquires a pre-existing business must show that the investment has created, or at least has a reasonable prospect of creating, 10 full-time positions, in addition to those existing before acquisition. The petitioner must, therefore, present evidence concerning the pre-acquisition level of employment. Simply maintaining the pre-acquisition level of employment is not sufficient, unless the petitioner shows that the pre-existing business qualifies as a "troubled business."

ON BEHALF OF PETITIONER:      LARRY J. BEHA
888   SE   3RD
AVENUE
SUITE 400
FORT     LAUD-
ERDALE FL  33316

    The preference visa petition was approved by the Director, Texas Service Center, who certified the decision to the Associate Commissioner for Examinations for review. The decision of the director will be reversed.

    The petitioner seeks classification as an alien entrepreneur pursuant to section 203(b)(5) of the Immigration and Nationality Act, 8 U.S.C. § 1153(b)(5). The director determined that the petitioner had adequately

established that he was actively in the process of investing the requisite amount of capital. The director further found that the investment would result in full-time positions for not fewer than 10 qualifying employees.

In response, counsel urges the Administrative Appeals Office to affirm the director's decision. He asserts that the petitioner's investment exceeds one million dollars and points out that the hotel is commercially active. He states that the petitioner's investment has already created at least 10 full-time jobs.

Section 203(b)(5)(A) of the Act provides classification to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise:

> (i) which the alien has established,
>
> (ii) in which such alien has invested (after the date of the enactment of the Immigration Act of 1990) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C), and
>
> (iii) which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).

## MINIMUM INVESTMENT AMOUNT.

The petitioner indicates that the petition is based on an investment in an existing business located in a targeted employment area, for which the required amount of capital invested has been adjusted downward.

8 C.F.R. § 204.6(e) states, in pertinent part, that:

> *Targeted employment area* means an area which, at the time of investment, is a rural area or an area which has experienced unemployment of at least 150 percent of the national average rate.

The petitioner's company, Ames Management, Inc., does business as a Howard Johnson Hotel located at 950 South Federal Highway in Stuart, Florida. The City of Stuart is in Martin County. The petitioner has submitted a March 1996 letter from the Florida Department of Labor and Employment Security indicating that Martin County qualified as a rural area in 1995. In addition, the Ft. Pierce metropolitan statistical area, which encompassed Martin County, experienced a sufficiently high unemployment rate to qualify as a targeted employment area in 1995.

A petitioner has the burden to establish that his enterprise does business in an area that is considered "targeted" as of the date he files his petition.

159

The fact that a business may be located in an area that was once rural, for example, does not mean that that area is still rural. The letter from the Florida Department of Labor and Employment Security contains the following statement: "This listing will only remain in effect until 1996 annual averages are available in early 1997." The petitioner here filed his Form I-526 in January 1998, and his data are at least a year, if not two years, out of date.

The Service has nevertheless independently obtained current employment information from the Florida Department of Labor and Employment Security. While Martin County is no longer a rural area, the "Ft. Pierce-Port St. Lucie" metropolitan statistical area does constitute an area of high unemployment; all of Martin County is contained in this new metropolitan statistical area. Therefore, the amount of capital necessary to make a qualifying investment in this matter is $500,000.

### THE PETITIONER HAS NOT MADE, AND IS NOT IN THE PROCESS OF MAKING, A QUALIFYING INVESTMENT OF CAPITAL.

8 C.F.R. § 204.6(e) states, in pertinent part, that:

*Capital* means cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien entrepreneur, provided the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness.

*Commercial enterprise* means any for-profit activity formed for the ongoing conduct of lawful business including, but not limited to, a sole proprietorship, partnership (whether limited or general), holding company, joint venture, corporation, business trust, or other entity which may be publicly or privately owned. This definition includes a commercial enterprise consisting of a holding company and its wholly-owned subsidiaries, provided that each such subsidiary is engaged in a for-profit activity formed for the ongoing conduct of a lawful business. This definition shall not include a non-commercial activity such as owning and operating a personal residence.

*Invest* means to contribute capital. A contribution of capital in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien entrepreneur and the new commercial enterprise does not constitute a contribution of capital for the purposes of this part.

8 C.F.R. § 204.6(j) states, in pertinent part, that:

(2) To show that the petitioner has invested or is actively in the process of investing the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suf-

fice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital. Such evidence may include, but need not be limited to:

(i) Bank statement(s) showing amount(s) deposited in United States business account(s) for the enterprise;

(ii) Evidence of assets which have been purchased for use in the United States enterprise, including invoices; sales receipts; and purchase contracts containing sufficient information to identify such assets, their purchase costs, date of purchase, and purchasing entity;

(iii) Evidence of property transferred from abroad for use in the United States enterprise, including United States Customs Service commercial entry documents, bills of lading and transit insurance policies containing ownership information and sufficient information to identify the property and to indicate the fair market value of such property;

(iv) Evidence of monies transferred or committed to be transferred to the new commercial enterprise in exchange for shares of stock (voting or nonvoting, common or preferred), Such stock may not include terms requiring the new commercial enterprise to redeem it at the holder's request; or

(v) Evidence of any loan or mortgage agreement, promissory note, security agreement, or other evidence of borrowing which is secured by assets of the petitioner, other than those of the new commercial enterprise, and for which the petitioner is personally and primarily liable.

(3) To show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petition must be accompanied, as applicable, by:

(i) Foreign business registration records;

(ii) Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;

(iii) Evidence identifying any other source(s) of capital; or

(iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

## Purchase of the hotel.

Ames Management, Inc. filed its articles of incorporation with the State

of Florida on June 27, 1997. All 1000 authorized shares were issued to the petitioner in July 1997. On October 31, 1997, Ames Management purchased a Howard Johnson's Motor Lodge for the sale price of $2.4 million, paid as follows: $25,000 in earnest money, consisting of a $10,000 initial deposit and a subsequent $15,000 deposit; $705,298.79 brought to settlement; and $1.7 million borrowed from 1st United Bank.

In a document entitled Sources of Investment Funds, the petitioner stated that the money used to purchase the hotel came from two sources. Approximately $450,000 were transferred to Barnett Bank from Argentina over the period 1994 to 1997; these funds "originated from personal savings and a sale of a house." An additional $500,000 were transferred from Argentina in December of 1996; these funds originated from the sale of "our business." The petitioner explained that, for both sources, "[t]hese monies were loaned to me by my father and I loaned them back to my company Ames Management, Inc. It has not been stipulated when I should return the funds."[1]

The balance sheet for the petitioner's hotel, dated November 30, 1997, confirms that the business's liabilities include long-term loans, totaling $922,136.09, payable to the shareholder (the petitioner), *See also* the Continuing and Unconditional Subordination of Debt discussed below. The accompanying "Transactions by Account" breaks down the amount, date, and destination of each loan. It is clear from this document that the $25,000 in earnest money and the $705,298.79 brought to the settlement table are mere loans from the petitioner to Ames Management. As specified in the definition of "invest" set forth in 8 C.F.R. § 204.6(e), debt arrangements between a petitioner and his business do not constitute qualifying contributions of capital. Therefore, the $730,298.79 paid toward the purchase of the hotel cannot be considered to be an "investment" by the petitioner.

Ames Management financed the balance of the purchase price, or $1.7 million, through 1st United Bank. According to the Mortgage and Security Agreement, the loan is secured by the hotel and all of its contents, including inventory, accounts, leases, the franchise agreement, furniture, patio umbrellas, landscaping, etc. First, it should be noted that a loan obtained by a corporation is not the same as a loan obtained by an individual, and it cannot be said that this loan through 1st United Bank is an investment of the *petitioner's* personal capital. Second, even if it were assumed, arguendo, that the petitioner and Ames Management were the same legal entity for purposes of this proceeding, indebtedness that is secured by assets of the enterprise is specifically precluded from the definition of "capital." *See* 8 C.F.R. § 204.6(e).

---

[1]The petitioner has not disclosed the terms of the loan from his father, and it is not known if, for example, it is secured by assets of Ames Management.

Counsel points out that the petitioner has personally guaranteed the payment of the loan. In a Continuing and Unconditional Subordination of Debt dated October 31, 1997, Ames Management and the petitioner agreed that all debts owed by Ames to 1st United would receive priority; all obligations owed by Ames to the petitioner would be subordinated to those owed to 1st United. In case of default by Ames with regard to its loan from 1st United, the petitioner would not seek or accept payment from Ames with regard to Ames's debts to the petitioner. In an Unconditional and Irrevocable Guaranty of Payment, also dated October 31, 1997, the petitioner agreed to make the mortgage payments if Ames Management did not. 1st United would have the right to proceed against the petitioner without first proceeding against Ames Management or against any property securing the note.

As the guarantee does not **obligate** 1st United to proceed against the petitioner, it does not prohibit 1st United from first seeking payment from the business.[2] The petitioner's personal guarantee of payment does not change the character of the mortgage; the assets of Ames Management are still primarily securing the mortgage. As such, the $1.7 million that the mortgage represents cannot properly be considered an investment of the petitioner's capital.

**Purchase of the van, pre-opening expenses, and corporate accounts**.

On November 1, 1997, Ames Management purchased a van to be used as the hotel shuttle. The petitioner made a down payment of $8,000 and Ames Management financed the balance of $17,477.06 through Primus. Counsel and the petitioner count this van as part of the petitioner's investment. The loan through Primus does not constitute a qualifying investment of capital because it is secured by the van itself, which is an asset of Ames Management; moreover, it is not an investment of the *petitioner's* capital because it is a loan obtained by Ames and not by the petitioner.

The $8,000 down payment also does not qualify as an "investment" of the petitioner's funds; according to the Transactions by Account referenced above, it is part of the $922,136.09 in long-term loans payable to the petitioner. In other words, the $8,000 must be repaid to the petitioner.

Counsel and the petitioner include bank accounts and pre-opening expenses as investments in Ames Management. The pre-opening expenses of $44,836.09, however, appear on the Transactions by Account and are part of the long-term loans payable to the petitioner. The amounts transferred to the bank accounts also appear on the Transactions by Account as long-term loans and therefore cannot constitute qualifying investments.

---

[2]It is not clear why, in the event of default, 1st United would prefer to research and pursue the petitioner's personal assets, which are not specified in the guarantee and which do not total $1.7 million, in lieu of seizing the easily accessible hotel itself.

### Resources to invest.

As discussed above, the petitioner has not made a qualifying investment in Ames because the amounts he has paid on behalf of Ames are mere loans to Ames, prohibited by the regulations. It should be noted that the petitioner has not documented that he has the means to begin the process of investing, either. He submits a personal net worth report as of November 30, 1997, purporting to show that his net worth is $761,747.02. It is not clear who prepared this report, and the report contains certain irregularities. For example, the hotel, which belongs to Ames Management, is counted among the petitioner's personal assets. Also, the mortgage held by Ames Management is included among the petitioner's personal liabilities. On the other hand, the hotel van owned by Ames Management is correctly omitted from the report. In effect, with this personal net worth report the petitioner is attempting to show that he has sufficient wealth to invest in the hotel because he has invested in the hotel. Subtracting the hotel entries leaves the petitioner's alleged net worth at $61,747.02.

The petitioner counts the funds in various personal bank accounts as part of his personal assets. A letter and bank statements from Barnett Bank reveal that the petitioner has held *joint* accounts with his father since October 1994. It is not possible to determine what portions of these accounts belong to the petitioner's father and what portions to the petitioner. Unlike the situation of a husband and wife, funds in a pooled joint account cannot be attributed to only one person.

A letter from Bank Boston states that, since April 1997, "Ames Resources Limited maintains an International Private Banking Relationship" with BankBoston. The petitioner is the secretary of Ames Resources Limited, and the account has always had balances in the mid seven figures. These funds belong to Ames Resources Limited, a corporation, and do not belong to the petitioner, an individual. Furthermore, "Ames Resources Limited" is not the same thing as "Ames Management, Inc.," and at most, this letter indicates that the petitioner serves as an officer at a separate corporation in addition to his own corporation, and that this separate corporation has a bank account with BankBoston.

### Source of funds.

The source of the funds lent to the petitioner (and in turn lent to Ames Management) has also not been adequately documented. The petitioner claims that the first $450,000 came from personal savings and the sale of "a house." The second $500,000 came from the sale of "our business." No

documentation, such as a sales contract or deed establishing ownership and price, has been submitted regarding the house or the business. Such documentation is relevant to the question of whether the funds have been lawfully obtained, which is a requirement under 8 C.F.R. § 204.6(j)(3).[3] Simply going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *See Matter of Treasure Craft of California*, 14 I&N Dec. 190 (Reg. Comm. 1972).

In summary, the petitioner has failed to demonstrate that he has invested, or is actively in the process of investing, the requisite amount of capital obtained by lawful means. The amounts referenced by the petitioner either do not constitute qualifying "capital," because they are not his, or have not been properly "invested," because they are debt arrangements between the petitioner and his business. Even if the petitioner and Ames were to be considered one and the same entity, the loans obtained by Ames from other banks would not be considered qualifying capital because they are secured by assets of the business. The petitioner has also failed to document the source of his funds other than to say that the funds are a loan from his father.

## THE PETITIONER HAS FAILED TO ESTABLISH A NEW COMMERCIAL ENTERPRISE.

8 C.F.R. § 204.6(h) states that the establishment of a new commercial enterprise may consist of:

(1) The creation of an original business;

(2) The purchase of an existing business and simultaneous or subsequent restructuring or reorganization such that a new commercial enterprise results; or

(3) The expansion of an existing business through the investment of the required amount, so that a substantial change in the net worth or number of employees results from the investment of capital. Substantial change means a 40 percent increase either in the net worth, or in the number of employees, so that the new net worth, or number of employees amounts to at least 140 percent of the pre-expansion net worth or number of employees. Establishment of a new commercial enterprise in this manner does not exempt the petitioner from the requirements of 8 C.F.R. § 204.6(j)(2) and (3) relating to the required amount of capital investment and the creation of full-time employment for ten qualifying employees. In the case of a capital investment in a troubled business, employment creation may meet the criteria set forth in 8 C.F.R. § 204.6(j)(4)(ii).

---

[5]A petitioner must also establish, pursuant to 8 C.F.R. § 204.6(e), that funds invested are his own. The petitioner has already conceded that the funds lent to Ames are not his; the funds belong to his father and must be repaid.

8 C.F.R. § 204.6(e) states that:

*Troubled business* means a business that has been in existence for at least two years, has incurred a net loss for accounting purposes (determined on the basis of generally accepted accounting principles) during the twelve- or twenty-four month period prior to the priority date on the alien entrepreneur's Form I-526, and the loss for such period is at least equal to twenty percent of the troubled business's net worth prior to such loss. For purposes of determining whether or not the troubled business has been in existence for two years, successors in interest to the troubled business will be deemed to have been in existence for the same period of time as the business they succeeded.

Although Ames Management was incorporated in 1997, it is the job-creating business that must be examined in determining whether a new commercial enterprise has been created. The Howard Johnson's Motor Lodge purchased by Ames Management had been in operation for approximately 24 years and was an ongoing business at the time of purchase; Ames Management, doing business as Howard Johnson Hotel, has merely replaced the former owner.

The petitioner has provided no documentation whatsoever to establish that the Howard Johnson's was a "troubled business," as defined above, prior to his purchase. He also does not claim that he will expand the hotel by 40 percent as provided in 8 C.F.R. § 204.6(h)(3). The petitioner has not shown the degree of restructuring and reorganization required by 8 C.F.R. § 204.6(h)(2); the hotel has always been a Howard Johnson and is still a Howard Johnson today. A few cosmetic changes to the decor and a new marketing strategy for success do not constitute the kind of restructuring contemplated by the regulations, nor does a simple change in ownership. Therefore, it cannot be concluded that the petitioner has created a new commercial enterprise.

## THE PETITIONER HAS NOT ESTABLISHED THE REQUISITE EMPLOYMENT CREATION.

8 C.F.R. § 204.6(j)(4) discusses job creation, and states:

(i) *General.* To show that a new commercial enterprise will create not fewer than ten (10) full-time positions for qualifying employees, the petition must be accompanied by:

(A) Documentation consisting of photocopies of relevant tax records, Form I-9, or other similar documents for ten (10) qualifying employees, if such employees have already been hired following the establishment of the new commercial enterprise; or

(B) A copy of a comprehensive business plan showing that, due to the nature and projected size of the new commercial enterprise, the need for not fewer than ten (10) qualifying employees will result, including approximate dates, within the next two years, and when such employees will be hired.

(ii) *Troubled business.* To show that a new commercial enterprise which has been established through a capital investment in a troubled business meets the statutory employment creation requirement, the petition must be accompanied by evidence that the number of existing employees is being or will be maintained at no less than the pre-investment level for a period of at least two years. Photocopies of tax records, Forms I-9, or other relevant documents for the qualifying employees and a comprehensive business plan shall be submitted in support of the petition.

8 C.F.R. § 204.6(e) states, in pertinent part:

*Employee* means an individual who provides services or labor for the new commercial enterprise and who receives wages or other remuneration directly from the new commercial enterprise...This definition shall not include independent contractors.

*Full-time employment* means employment of a qualifying employee by the new commercial enterprise in a position that requires a minimum of 35 working hours per week.

In a letter dated January 15, 1998, the petitioner states that Ames Management employs 23 full-time United State citizens or lawful permanent residents. It also employs part-time employees on an as-needed basis, as well as multiple subcontractors.

Section 5.1.19 of the Agreement for Sale and Purchase refers to an Exhibit H containing the payroll of the Howard Johnson's Motor Lodge as of the date of the petitioner's purchase. The petitioner has furnished copies of the neatly-labeled exhibits, but the only document between Exhibit G and Exhibit I is an unlabeled, one-page worksheet. This worksheet, for the 1997 quarter to date, merely provides the amount of taxes withheld, wages paid, etc. It does not name any of the employees or specify the positions held or hours worked, although it does mention the number of employees as 29.

To show the current level of employment at the hotel, the petitioner has supplied the payroll journal for the period ending November 28, 1997. Assuming that this journal reflects one week of work and not two, only 16 individuals clearly worked at least the minimum 35 hours to be considered full-time employees.[4] Another three were paid salaries and not by the hour, while the last three worked fewer than 35 hours and must be considered part-time employees. The petitioner has submitted a Form I-9 for one other person who was hired after the date of the payroll journal. At most, the hotel employs 20 full-time workers. The petitioner has not established that this figure constitutes either the maintenance of the previous level of full-time

---

[4]If the payroll journal reflects *two* weeks of work instead of one, then only two individuals worked at least the minimum 70 hours to be considered full-time employees.

employment or the addition of 10 new, full-time positions. As noted above, the hotel previously had 29 employees of unknown designation.

If a petitioner has not already created the requisite number of positions, he must submit a comprehensive business plan clearly demonstrating that the business will need the applicable level of employment. 8 C.F.R. § 204.6(j)(4)(i)(B), The plan must contain a timetable for hiring and must be credible. The petitioner has provided a Marketing Plan 1998 for the hotel. The plan discusses, in detail, the petitioner's marketing strategies and employee-incentive programs, among other things. It does not address the issue of hiring, however. While the plan states that a new position will be created in sales, the person named to occupy this position, Janet Mills, has been working at the hotel since 1994.

## CONCLUSION.

In conclusion, the petitioner is ineligible for classification as an alien entrepreneur because he has failed to show that he has invested, or is actively in the process of investing, the requisite amount of money. In every transaction, he has attempted to distance himself from making an actual investment in Ames Management by instead becoming Ames Management's creditor. The petitioner has not shown that Ames Management has been established with anything but loans; in essence, the petitioner has attempted to create something from nothing. The petitioner has further failed to demonstrate that he has established a "new" commercial enterprise, and he has failed to show that his business has or will engage in either employment maintenance or employment creation.

The burden of proof in these proceedings rests solely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. The petitioner has not met that burden. Accordingly, the petition is denied.

**ORDER:** The decision of the director is reversed. The petition is denied.